CLERKS OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
7/26/2017
JULIA C. DUDLEY, CLERK
BY: s/ JODY TURNER
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Case No. 5:14CR00011 |
| v. ) | |
| ) | By:  Michael F. Urbanski |
| MICHAEL BRYAN FRANCO, ) | Chief United States District Judge |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This matter is before the court on the government's motions for final forfeiture of Franco's interest in certain real estate located at 7393 Orkney Grade, Mount Jackson, Virginia 24482 (the "Orkney Grade Residence" or the "Property"). ECF Nos. 432, 468. The court held hearings on this matter on March 28, 2017 and June 28, 2017. For the reasons articulated herein, the government's motions for final forfeiture are **GRANTED**, and Michael Franco's ownership interest is forfeited to the government, subject to the conditions described below.

### I.

The court entered a preliminary order of forfeiture on June 30, 2015, finding that "the 7393 Orkney Grade real estate was used by Franco and co-defendant Luther Martin on multiple occasions to break up bulk marijuana into distribution quantities." ECF Nos. 403, 404. Pursuant to that order, the government was required to publish notice of the forfeiture, and provide opportunity for innocent parties claiming a legal interest in the Orkney Grade Residence to file a petition with the court. ECF No. 404, at 1. The order also provided that "this Order of Forfeiture shall become final as to the defendant upon entry." Id. at 2.

The government published notice as required, and several parties came forward to claim legal interests. Anthony and Vincent D'Amico each claimed a 1/12 interest in the Property on July 23, 2015. ECF No. 432, at 1–2. Franco's wife, Darlene Franco, also came forward to claim an interest in the property. Id. at 2. The government characterized her as claiming a 5/12 interest. Id. It arrived at this number by subtracting Anthony and Vincent D'Amico's interests, and then halving the remainder to account for Michael Franco's forfeited interest. Id. at 2 n.1. Finally, Seneca Mortgage Servicing asserted a lienholder interest in the Orkney Grade Residence.[1] Id. at 2.

Darlene Franco also filed objections to the preliminary order of forfeiture. ECF No. 410. In her objections, she clarified the nature of her interest in the Property: she owns a 1/6 interest as a tenant in common, and owns a 2/3 undivided interest with Michael Franco as tenants by the entirety. Id. Thus, the ownership status of the Orkney Grade Residence is as follows:

- Vincent D'Amico: 1/12
- Anthony D'Amico: 1/12
- Darlene Franco: 2/12
- Darlene and Michael Franco, as tenants by the entirety: 8/12
- NationStar Mortgage, LLC: Lienholder interest

The United States does not dispute the validity of these ownership interests. See ECF No. 473, at 1 (incorporating by reference Seneca Mortgage Servicing, LLC's articulation of

---

[1] Seneca Mortgage Servicing later transferred its interest in the Property to NationStar Mortgage, LLC. See ECF No. 453, at 1 n.1. Given that the deed of trust securing the Property was not signed by the D'Amicos, "Seneca concedes that [it] does not encumber the interests of the D'Amicos." Id. at 2.

2

the ownership and title history of the Property). The United States also agrees to recognize the tenancy-in-common interests of Vincent D'Amico, Anthony D'Amico, and Darlene Franco, and NationStar Mortgage's lienholder interest, and has suggested a forfeiture scheme whereby these parties are compensated for their interests. See ECF No. 473-1. Furthermore, the government does not attempt to argue that Darlene Franco's tenancy by the entirety ownership interest does not qualify for any protection under § 853(n)(6). See ECF No. 473, at 1 ("It is the government's position that upon entry of the Preliminary Order, . . . the United States assumed the status of a tenant in common with Darlene as to the 2/3 interest she owned with [Franco].").

Thus, the sole remaining issue to be resolved is how the court should treat Darlene Franco's tenancy by the entirety interest. "[T]he United States requests that the court sever the tenancy by the entirety estate and hold that the United States and Darlene [Franco] each hold a 1/3 interest in the subject property as tenants in common." ECF No. 473, at 11. Franco, on the other hand, suggests that the court decline to order forfeiture, and instead enter an order "giving a lien on the property in favor of the government in the amount set by the [c]ourt." ECF No. 474, at 9.

## II.

21 U.S.C. § 853(a) provides, in relevant part, that a person convicted of certain crimes "shall forfeit to the United States, irrespective of any provision of state law . . . any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of" the offense of conviction. Property is later defined as including "real property" and "tangible and intangible personal property, including rights,

privileges, interests, claims, and securities." Id. § 853(b). This statute protects the interests of the innocent, however, by providing that the court should hold a hearing upon the allegation of an innocent owner's interest in the forfeited property. Id. § 853(n)(1). The court is directed to modify the forfeiture order if an innocent petitioner can demonstrate that:

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section . . . .

Id. § 853(n)(6). The criminal forfeiture statute provides for significant court discretion in this process, requiring that the court impose "such terms and conditions as the court shall deem proper," and allowing the court to "enter . . . appropriate restraining orders or injunctions, require the execution of satisfactory performance bonds, appoint receivers, conservators, appraisers, accountants, or trustees, *or take any other action* to protect the interest of the United States in the property ordered forfeited." Id. § 853(g) (emphasis added).

Under Virginia law, a tenancy by the entirety requires five unities between the parties: interest, title, time, possession, and marriage. Wolfe v. Sprouse, 183 B.R. 739, 741 (W.D. Va. 1995); see United States v. 35 Acres in Cherokee Cty., 940 F.2d 654, at *1 (4th Cir. 1991) (unreported table decision) ("The central concept of tenancy by the entirety is that the property is not owned by either the husband or the wife but by the marital unit, with each spouse having an undivided right to the entire property."). Tenants by the entirety, like joint

4

tenants, possess the right of survivorship. See United States v. Lee, 232 F.3d 556, 560 (7th Cir. 2000) ("Upon the death of one spouse, the other does not 'inherit' the interest of the other in such estate, but merely comes into the full beneficial enjoyment of such estate, which is said to vest by operation of law in the surviving spouse."). However, tenants by the entirety possess additional privileges. "[A]n estate by the entirety is immune from the claims of creditors of either the wife or the husband alone." Wolfe, 183 B.R. at 741 n.2 (citing Vasilion v. Vasilion, 192 Va. 735, 66 S.E.2d 599 (1951)). This state law protection from creditors does not necessarily shield tenancies by the entirety from federal forfeiture, however. Where federal and state law conflict, federal law prevails. U.S. Const., Art. VI, cl. 2. Thus, though state law defines the nature of the property interest in question, federal law governs whether the subject property is forfeitable.[2] See United States v. Buk, 314 Fed. App'x 565, 568 (4th Cir. 2009); United States v. 2525 Leroy Lane, 910 F.2d 343, 347 (6th Cir. 1990) ("We conclude that recognition of state laws governing property rights does not contravene the federal forfeiture scheme, and that the application of state law is the most appropriate method of determining the interest of an innocent owner."). Even where state law forbids criminal forfeiture of property held in a tenancy by the entirety in state court, the guilty spouse's interest is still forfeitable in a federal proceeding. See United States v. Fleet, 498 F.3d 1225, 1227–30 (11th Cir. 2007).

---

[2] Similarly, a federal tax lien can attach to property held in tenancy by the entirety despite state-law protections. See United States v. Craft, 535 U.S. 274 (2002); Popsky v. United States, 419 F.3d 242 (3d Cir. 2005).

5

## III.

Courts have struggled with how to best recognize the tenancy by the entirety interests of innocent spouses in federal forfeiture proceedings.[3] Even considering only criminal forfeiture, decisions vary greatly. The Court of Appeals for the Seventh Circuit has held that Florida law shielded from forfeiture any interest whatsoever in property held in tenancy by the entirety. United States v. Lee, 232 F.3d 556, 562 (7th Cir. 2000). The Court of Appeals for the Eleventh Circuit, on the other hand, reached the opposite conclusion, and allowed forfeiture of the entire property, despite the innocent spouse's tenancy by the entirety interest. United States v. Kennedy, 201 F.3d 1324, 1334–35 (11th Cir. 1990). Still other decisions involve intermediate solutions, in which the innocent spouse retains some ownership interest. E.g., United States v. Fleet, 498 F.3d 1225, 1232 (11th Cir. 2007); United States v. Certain Real Property Located at 2525 Leroy Lane, 910 F.2d 343, 351 (6th Cir. 1990).

---

[3] This struggle is only compounded by the differences between the federal statutory civil and criminal forfeiture schemes. "Civil forfeiture acts in rem against the seized property itself, but criminal forfeiture acts in personam as punishment against the party who committed the criminal acts." United States v. Fleet, 498 F.3d 1225, 1231 (11th Cir. 2007). Because of this, the protections provided to innocent owners in civil forfeiture proceedings are stronger, given that the property may potentially be forfeited in toto; conversely, when the government seeks criminal forfeiture, the property is only forfeitable to the extent of the defendant's interest, and thus innocent co-owners are given shorter shrift. Thus, unlike the criminal forfeiture provisions, which allow an innocent owner to assert her interest only after preliminary forfeiture has taken place, federal civil forfeiture provisions contain an "[i]nnocent owner defense" which provides that "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute." See 18 U.S.C. § 983(d)(1).

The distinction is important: the criminal forfeiture statute requires the court to authorize execution so as "to protect the interest of the United States in the property ordered forfeited." 21 U.S.C. § 853(g). "The fact that the innocent spouse, even though she retains her property interest, may be adversely affected by the forfeiture of her guilty mate's interest is no bar to forfeiture of his interest." Fleet, 498 F.3d at 1232. This is why the cases that have entirely disallowed civil forfeiture in the face of the state law protections afforded to tenancies by the entirety are not dispositive in the criminal context. E.g., 35 Acres in Cherokee Cty., 940 F.2d 654 (4th Cir. 1991); United States v. One Single Family Residence with Out Buildings Located at 15621 S.W. 209th Ave., 894 F.2d 1511, 1516–17 (11th Cir. 1990). On the other hand, cases involving civil forfeiture, while differing from criminal forfeiture in the initial issue of forfeitability, are instructive as to the subsequent question of the nature and extent of each spouse's interest in property held in a tenancy by the entirety.

The discrepancy is perhaps due to the fact that, in its requirement that the court amend its forfeiture order to recognize "legal right, title, or interest" vested in third-party petitioners, § 853 discloses a contradiction. The court is directed to order forfeiture "irrespective of any provision of State law," id. § 853(a), yet must also act to recognize the "legal right, title, or interest" of third parties, id.§ 853(n)(6)(A). "Property interests have long been acquired and defined by state law; it was with those interests in mind that Congress drafted provisions for the protection of innocent third parties." Leroy Lane, 910 F.2d at 348. Thus, courts are required to consider and recognize "property rights which have traditionally been measured in terms of state law," id. at 349, but may not allow state law to defeat criminal forfeiture. It is no wonder that judicial interpretations of these provisions have varied.[4]

Ultimately, this court declines to follow the decisions on either end of the spectrum: the total forfeiture ordered in Kennedy or the complete protection from forfeiture in Lee. In Lee, the government sought a home owned in tenancy by the entirety as a substitute asset, rather than because the home itself was connected to criminal activity. 232 F.3d at 560. The court held that, "[i]n such a case, the need to strike a balance between the government's interest in seizing the means for committing a crime and the innocent spouse's rights must be assessed differently," given that the seizure of substitute assets does not involve "the compelling need to seize unlawfully used property." Id. at 561. That factor is not present

---

[4] This contradiction led the Sixth Circuit Court of Appeals to conclude that, "[w]hen Congress provided for the forfeiture of property 'irrespective of State law', it intended solely that state law offer no protection to the convicted defendant's interests in the property. The provisions of § 853(a) were never meant to restrict the property interests of an innocent owner." Id. at 348.

7

here: the subject property in this matter *was* used unlawfully, which militates against similarly broad protection of Darlene Franco's interest.

Kennedy also is distinguishable. There, the court concluded that the innocent spouse's tenancy by the entirety interest was not within the class of property interests the court was required to consider under § 853(n). The court concluded that § 853(n)(6)

> protects only two classes of petitioners, those whose legal interests in the property were superior to the defendant[] at the time the interest of the United States vested through the commission of an act giving rise to forfeiture and "bona fide purchasers for value" without knowledge of the forfeitability of the defendant's assets.

201 F.3d 1328–29 (brackets in original) (quoting United States v. Reckmeyer, 836 F.2d 200, 204 (4th Cir. 1987)). To be sure, § 853(n)(6)(B) protects only one class of interests: those of bona fide purchasers for value. However, this court does not agree that § 853(n)(6)(A) protects only "those whose legal interests in the property were superior" to the defendant's interest. § 853(n)(6)(A) requires the court to acknowledge a petitioner's interest when

> the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because *the right, title, or interest was vested in the petitioner rather than the defendant* or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section . . . .

(emphasis added). The emphasized text above is disjunctively listed alongside the superior interests the Kennedy court was prepared to recognize. In this court's view the plain language of § 853(n)(6)(A) unequivocally establishes two interests the court must recognize: interests superior to that of the defendant, and interests that have vested in the innocent

8

party rather than the defendant. Darlene Franco's interest falls into the latter category.[5] Moreover, here, the government does not argue that Darlene Franco's interest should go completely unrecognized. See ECF No. 473, at 2–3. Rather, the question is merely the extent of recognition that interest should get. For both these reasons, this court will not follow Kennedy.

Instead, the court will exercise its broad powers under § 853 and utilize an intermediate solution modeled on the decision of the Court of Appeals for the Third Circuit in United States v. Parcel of Real Property Known as 1500 Lincoln Ave., 949 F.2d 73 (3d Cir. 1991) (Alito, J.).[6] In 1500 Lincoln Ave., the court considered an appeal from the district court's dismissal of a complaint for civil forfeiture of a pharmacy owned in a tenancy by the entirety[7] by the defendant husband and his innocent wife. 949 F.2d at 74. The opinion primarily focuses not on forfeitability—the government conceded that the innocent wife had "a valid innocent owner defense," id. at 75—but rather on the extent of the interest that the innocent wife was entitled to retain.

The court began by noting that "the statutory language does not clearly reveal what interest, if any, is subject to forfeiture in a case such as this. Indeed, the statutory language is susceptible to diametrically opposed interpretations." Id. at 76.

---

[5] In concluding that § 853(n)(6) protected only two types of interests, the Kennedy court relied on United States v. Reckmeyer, 836 F.2d 200 (4th Cir. 1987). Reckmeyer did not involve a tenancy by the entirety interest. Rather, the Reckmeyer court considered two third-party petitioners, both of whom were found to have recognizable interests under § 853(n)(6)(B). Thus, the court's brief discussion of the class of interests protected under § 853(n)(6)(A) was mere dicta.
[6] That 1500 Lincoln Ave. involved civil rather than criminal forfeiture does not prevent the court from modeling its forfeiture scheme on that endorsed by the Third Circuit Court of Appeals. See United States v. Alquzah, 91 F. Supp. 3d 818, 832 (W.D.N.C. 2015) ("[T]he criminal forfeiture statute provides for the court to 'take any other action to protect the interest of the United States in the property ordered forfeited.' 21 U.S.C. § 853(g). This language is broad enough to encompass the 'other actions' expressly provided for civil forfeiture in § 983(d)(5), as well as the kind of actions taken in [civil forfeiture] cases.").
[7] The tenancy by the entirety in question was defined by Pennsylvania law, which does not differ in any relevant respects from Virginia law.

9

> Because each spouse in a tenancy by the entireties is regarded as owning the whole estate, it may be argued . . . that forfeiture of the guilty spouse's interest means forfeiture of the whole estate and consequently leaves nothing for the innocent spouse. On the other hand, it may be argued . . . that the innocent spouse's retention of his or her interest in the tenancy means retention of the whole estate and therefore leaves nothing for the government to obtain by forfeiture. Intermediate interpretations—such as the government's contention earlier in this case that one-half of the property should be forfeited—are also possible.

Id. at 76–77. In the face of such ambiguity, the court aimed to "adopt the interpretation that best serves the two goals that [the civil forfeiture statute] was intended to promote: forfeiture of the property used in committing drug offenses and preservation of the property rights of innocent owners." Id. at 77.

On appeal, the government did not argue for forfeiture of the entire estate. Rather, it suggested a scheme whereby the guilty spouse's interest was immediately forfeited, but the innocent spouse was allowed to "retain full and exclusive use of the property during her life, protection against any alienation without her consent or any attempt to levy upon her husband's former interest, and the right to obtain title in fee simple absolute if her husband predeceases her." Id. The court accepted that forfeiture scheme, and ordered the district court to "determine whether [the guilty spouse's] interest is subject to forfeiture irrespective of" the innocent owner defense. Id. at 78. If so, the district court was to order forfeiture subject to the conditions provided for in the court's opinion.

The government rightly notes that the court in 1500 Lincoln Ave. merely adopted the recommendation of the United States; unlike here, the government did not seek different forfeiture provisions. ECF No. 473, at 8–9. Here, the government opposes the Third

10

Circuit's solution for several reasons. First, it argues that "tying the ultimate interests of the United States and Darlene to the survivorship of the defendant invests the defendant with a quasi-ownership status that has already been extinguished by the court." Id. at 9. This is incorrect. As the government points out, Michael Franco's ownership interest was extinguished by the court's preliminary order of forfeiture. The fact that the final order of forfeiture will preserve Darlene Franco's right of survivorship simply means that the government and Darlene Franco's interests in the property will depend on events in Michael Franco's life. Michael Franco will not retain the right to possession or use of the property, to prevent waste and compel upkeep, to alienate the property, or any other incidents of ownership.

Second, the government argues that the uncertainty associated with the right of survivorship is potentially unfair to both Darlene Franco and the government, depending on which spouse predeceases the other. "This would essentially turn the ownership situation into a game of chance, where the government would end up holding the entire property, or nothing." Id. Be that as it may, the fact is that the government's interest flows from Michael Franco's ownership interest. Since he owned as a tenant by the entirety, his ownership already involved the "game of chance" the government seeks to avoid. If the court accepted the government's proposed forfeiture scheme, and created a tenancy in common between Darlene Franco and the government, the government would accede to different rights—greater in some ways, lesser in others—than Franco possessed. Darlene would lose her right of survivorship, and the right to prevent unilateral alienation by her cotenant. The government would likewise lose the possibility of eventual total ownership of the entirety

11

interest. Whether this result is more equitable is debatable; what is not debatable is that § 853 entitles the government to Michael Franco's interest, and his interest alone. To adopt the solution the government espouses would give the government both more and less than its due.[8]

The government's final argument is also its most compelling. It argues that, "[a]s a tenant by the entirety, the United States could theoretically exercise its right to exercise a possessory interest in the property with Darlene. Such a situation could and likely would ultimately prove untenable." Id. at 9–10. In recognition of this fact, this court, as in 1500 Lincoln Ave., will award Darlene Franco the exclusive (as to the government) right to possess the subject property for life. In other words, though the government will take all other incidents of ownership that Michael Franco was entitled to, it will not receive his possessory right.

This means that the government will not step exactly into Michael Franco's shoes. (Though he has lost his possessory right, the government will not gain it.) This discrepancy appears to the court to be unavoidable: the best case result of attempting to analogize a state-law created ownership scheme founded on the unity of marriage to a co-tenancy forged through federal criminal forfeiture between a private individual and the United States of America. See 2525 Leroy Lane, 910 F.2d at 351 ("Here, [the spouses] are still married, and therefore, the entireties estate is still intact under state law, even though by operation of the federal forfeiture statutes, [the defendant spouse] no longer has any interest in the property."). Simply put, "the Government cannot occupy the position of [Michael Franco] in

---

[8] Because, after entry of the final order of forfeiture, the government and Darlene Franco will be co-owners with the mutual right to prevent alienation by the other, they will be free to modify the ownership structure of the Property by mutual agreement, should they so choose.

the entireties estate, since the estate is founded on marital union, and the Government obviously cannot assume the role of spouse" to Darlene Franco. Id.

Any other solution in contemplation would stray even further from the nature of Michael Franco's forfeited interest, and would impose greater costs as well. As described above, the government's recommendation of a tenancy-in-common would vary even more starkly from the incidents of ownership to which the government is entitled. Franco's suggestion—that the government be entitled to a lien on the property "in the amount set by the Court," ECF No. 474, at 9—"frustrates the strong governmental interest in forfeiture since it permits a guilty spouse during his . . . lifetime to retain title as a tenant by the entireties in property that he . . . has used in illegal drug activities." 1500 Lincoln Ave., 949 F.2d at 78. The government would receive only a minimal quantum of Franco's ownership interest; moreover, such a scheme would entail "substantial procedural difficulties," id.—the government would become a creditor of the Francos, and would have to initiate additional proceedings in order to realize the value of the lien.

## IV.

"[T]he law on this issue is anything but settled and depends greatly on the facts and circumstances of each case and the type of forfeiture procedure initiated by the Government." United States v. 19012 Lake Road, No. 1:14mc00020, 2014 WL 1682826, at *2 (W.D. Va. Apr. 29, 2014) (collecting authorities). Section 853 requires the court to order forfeiture of Franco's property, while recognizing and protecting his innocent spouse's interest. That interest, as defined by state law, is intertwined with Franco's forfeited rights in a way that does not admit of easy, neat resolution. After reviewing the disparate conclusions

13

of the other federal courts to consider this issue, the court concludes this forfeiture scheme most accurately forfeits the rights of Michael Franco while preserving those of Darlene. As such, it is **ORDERED** that Michael Franco's interest in 7393 Orkney Grade, Mount Jackson, Virginia 24482 is forfeited. Darlene Franco shall retain full and exclusive[9] use of the property during her life, protection against alienation without her consent or any attempt to levy upon her husband's former interest, and the right to obtain title in fee simple (as to the 2/3 share formerly owned by Darlene and Michael Franco) should her husband predecease her.[10] Should she predecease her husband, however, the government will obtain the 2/3 share in fee simple.

An appropriate Order will be entered.

Entered: 07-26-2017

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge

---

[9] Darlene Franco's right to use of the property is exclusive as to the government. The other parties holding a possessory ownership interest will of course also be entitled to use of the property.

[10] The court also recognizes the possibility that the interests formerly held by the Francos as tenants by the entirety may "be transmuted into some divisible form by their actions or by law." 15621 S.W. 209th Ave., 894 F.2d at 1516 n.6. Should Darlene and Michael Franco divorce, for instance, the tenancy by the entirety created by Virginia law would be severed, and the United States would become a tenant in common with Darlene Franco.

14